## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JAMES E. CLEMONS
ADC #78567                                              PETITIONER

v.                          No. 5:12-cv-176-DPM

WENDY KELLEY[1], Director, Arkansas
Department of Correction                               RESPONDENT

### ORDER

1. A Union County, Arkansas, jury convicted James Clemons in 2009 of

the robbery-related capital murder of Billy Ponder. Clemons is serving a life

sentence without the possibility of parole. The crime occurred in 1992,

seventeen years before the trial. Ponder was a florist in El Dorado. He was

found in the floor of his shop, dead from multiple stab wounds. The cash

register was open, with the drawer on the floor, empty except for some

checks. Ponder's billfold was missing too. There were no eye witnesses. The

murder weapon was never found. Notwithstanding much investigation, no

solid suspect was developed and the case went cold.

---

[1]Wendy Kelley has replaced Ray Hobbs as the Director of the
Arkansas Department of Correction. The Court directs the Clerk to amend
the docket.

The El Dorado Police Department, however, continued to work the file periodically. In 2006 and 2007, the State Crime Laboratory retested some of the physical evidence, including Ponder's blue jeans. These trousers had two small spots of semen on them. DNA from the semen matched James Clemons's DNA, which was in the database because he'd been convicted of other crimes. El Dorado officers tracked Clemons down in Wisconsin. He had settled there years earlier after his work for a carnival had taken him from El Dorado.

Clemons was arrested, waived his rights after getting *Miranda* warnings, and gave a video-taped interview. Though at first he said he didn't know Ponder, after being confronted with the DNA evidence from the jeans, Clemons explained that he and Ponder had had a chance sexual encounter at the flower shop around the time that Clemons left El Dorado with the carnival. He was, he said, trying to put this part of his past behind him; he had married and made a new life in Wisconsin. Clemons said that he went by the shop on his bicycle, after work one day, to get his mother some flowers because he was leaving town. According to Clemons, Ponder offered him $25 or $30 if Ponder could masturbate Clemons and himself, which he did. When

Clemons asked for the money, Ponder said he didn't have it. Clemons pointed to the cash register, which Ponder opened. Money passed, though there was some dispute at trial about whether Ponder handed it to Clemons or he got it from the register himself. No fingerprints tying Clemons to the register or the cash drawer were recovered. Clemons said he got his vase of flowers and left, pedaling across town with them to his mother's house. Ponder was, Clemons said, standing there alive and well when he left. Throughout the interview Clemons denied any involvement in a robbery or a murder.

At trial, the prosecution's theory was that the sexual encounter had turned violent, ending in murder and robbery. Clemons's retained counsel tried to keep the video statement out, but the circuit court admitted a redacted version of it. (The redactions cut references to Clemons's criminal history and a polygraph.) The prosecutor offered the scene evidence, which included many DNA and fingerprint test results. The only conclusive results linking Clemons to the flower shop was his DNA in the semen spots on Ponder's jeans and on a cigarette butt. The prosecutor also offered the testimony of a man — Clemons's cousin — who had worked across the street. At some point

on the day of the murder, he had glanced and seen a black man on a bicycle around the flower shop. This man looked like Clemons, though this witness was adamant that he couldn't say for sure it was Clemons. Various witnesses who had been in contact with Ponder one way or the other that day established that the crime occurred late in the day, sometime between 4:15 and 7:00. Ponder's wife and daughter testified that he was fastidious about his work clothes, which he changed daily and had dry cleaned and heavily starched. He did this with jeans he wore to work too. A jail house informant testified that Clemons had confessed to murdering and robbing Ponder. This supposedly happened when they were both at the Union County jail.

The jury was persuaded by the prosecution's case and convicted Clemons of capital murder related to robbery. Prosecutors had waived the death penalty. And Clemons had waived submission of any lesser included offenses. The sentence—life without parole—was a foregone conclusion under Arkansas law.

**2.** Clemons appealed. His trial counsel missed the deadline for filing the record by one day. He accepted fault; and the Arkansas Supreme Court therefore granted his motion to file the record late, sent the lawyer to the

Committee on Professional Conduct, and proceeded to the merits. 2009 Ark. 583. Another lawyer then joined trial counsel for the appeal. This new lawyer signed the appellate briefs and seems to have taken the lead. Clemons describes him as a "lawyer friend" of trial counsel's. № 2 at 28. The Supreme Court affirmed Clemons's conviction. 2010 Ark. 337, 369 S.W.3d 710. No argument about ineffective counsel at trial was made.

Clemons filed a *pro se* motion for state post-conviction relief. Among other things, he argued ineffectiveness in various ways, though not in all the ways he argues now. The circuit court, acting through the judge who'd presided over the trial, denied the petition on the merits. № 7-5. Clemons appealed. The Supreme Court affirmed. The Court held that it lacked jurisdiction because Clemons had never filed his Arkansas Rule of Criminal Procedure 37 petition with the circuit clerk. 2011 Ark. 345.

Clemons then filed his petition for a writ of habeas corpus from this Court. While his petition has been pending here, Clemons has litigated in state court about further scientific testing of the scene evidence. 2013 Ark. 18 and 2014 Ark. 454, 446 S.W.3d 619. He hasn't succeeded in getting any more testing done. This Court denied Clemons's request to either order a

Department of Justice investigation into the Union County circuit clerk's handling of various filings connected with his more-testing efforts or expand his petition here to cover those handling issues.  № 35.  Clemons has, helpfully, kept the Court informed of what was happening in that branch of the case. *E.g.*, № 37.

**3.**  There's a threshold issue.  Clemons, who was representing himself at that point, sent his Rule 37 petition to the presiding circuit judge and to the circuit clerk for filing.  His petition had the wrong case number, so the clerk filed it in the wrong case.  After the State responded on the merits, the circuit judge denied the petition on the merits.  № 7-5.  The source of the wrong case number was the transcript of trial proceedings prepared for the direct appeal. № 36-A at 81.  On reconsideration of the State's limitation argument, Magistrate Judge Volpe concluded that Clemons's filing was sufficient in the circumstances.  № 26 at 3-4.  The State hasn't objected to that recommendation; and of course Clemons hasn't either.

Reviewing the case as if no recommendation had been made, as this Court said it would, № 32 at 2, the Court agrees that the State's limitation argument fails. FED. R. CIV. P. 72(b)(3).  This is a question of federal law.  28

U.S.C. § 2244(d); *Lee v. Kemna*, 534 U.S. 362, 375 (2002). Notwithstanding the Arkansas Supreme Court's conclusion that it lacked jurisdiction to review the denial of Clemons's Rule 37 petition because he never filed it, 2011 Ark. 345, the record is now clear that Clemons did file his petition with the circuit clerk, albeit in the wrong case. Thus, the Arkansas Supreme Court's resolution of Clemons's Rule 37 claims does not rest on a state law ground that is "adequate to support the judgment." *Lee*, 534 U.S. at 375–77. Instead, the circuit court correctly found that the Rule 37 petition was "timely filed." № 7-5 *at 1*. Given that Clemons's case-number mistake echoed the court reporter's, and that his petition was addressed on the merits by the State and the circuit court notwithstanding the scrivener's error, Clemons's federal petition does not stumble at the threshold as untimely.

**4.** The governing statute is 28 U.S.C. § 2254. This Court may grant Clemons relief only if he's in state custody "in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). This Court's role is limited. The statute doesn't allow this Court to retry this case, or to substitute its judgment for the Arkansas courts'. Instead, and especially insofar as the Antiterrorism and Effective Death Penalty Act of 1996 changes

to the habeas statute apply, the Great Writ is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation omitted); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015).

Clemons made some of the claims he now presses here in state court; some he didn't. For two reasons, the Court will address all his claims on the merits. First, the statute and precedent allow this in the circumstances presented, especially where the procedural-default issues are tangled. 28 U.S.C. § 2254(b)(2); *McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990). Second, Clemons's new claims are either directly or indirectly about the alleged ineffective assistance of trial counsel. Clemons represented himself in his post-conviction proceedings. *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013) could therefore open the door for consideration of trial counsel's constitutional effectiveness. *Sasser v. Hobbs*, 735 F.3d 833, 851–54 (8th Cir. 2013). The best course, all material things considered, is to address all Clemons's claims.

-8-

**5. Ineffectiveness of Trial Counsel?** On Clemons's points that were fairly presented to the Arkansas courts, this Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (internal quotation omitted). This deference implements § 2254(d). And it follows settled precedent. *Strickland v. Washington*, 466 U.S. 668, 684–96 (1984). This Court asked for, received, and has read the trial record. No trial lawyer's work is perfect. But that's not the legal standard. The Court sees no legal or factual error involving trial counsel's performance that would satisfy the demanding requirements of either § 2254(d)(1) or § 2254(d)(2). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Clemons's critique of his trial lawyer's efforts does not meet this benchmark. Whether considered as a matter of counsel's performance or of prejudice to Clemons, the state court correctly concluded that the adversary process functioned properly in this case.

On Clemons's ineffectiveness points that were not presented to an Arkansas court, and which may therefore be open under *Martinez* and *Trevino*, the threshold issue is prejudice. Unless Clemons's failure to raise a point actually prejudiced him, then the point remains closed and procedurally barred. *Sasser v. Hobbs*, 743 F.3d 1151, 1151 (8th Cir. 2014). The Court has considered the merits of the new points, as the prejudice inquiry necessarily requires. *Ibid.* No evidentiary hearing is needed, though. The existing record contains an adequate factual basis on which to rule fairly. The facts beneath Clemons's claims do not show by clear and convincing evidence that, but for the new asserted defects in counsel's performance, no reasonable fact finder could have found Clemons guilty of capital murder. 28 U.S.C. § 2254(e)(2)(A)(ii) & (B). Nor is there a sufficient preliminary evidentiary showing. Clemons's new ineffectiveness points fail; he was simply not prejudiced, in the demanding statutory sense, by what his trial lawyer did and didn't do.

Now to the eight particulars that Clemons says show his trial lawyer's ineffectiveness.

-10-

First, on the scope of counsel's investigations, including about other possible perpetrators, and use of that information (including possible blackmail by other black males who frequented Ponder's shop) at trial. Neither Circuit Judge Singleton's analysis nor his conclusion justifies relief under § 2254(d). Without citing cases, he was clearly following the *Strickland* line. His finding that Clemons's lawyer had sufficient information from the voluminous police files is not unreasonable. Clemons's assertion that counsel never reviewed those files is unsubstantiated. For example, the hearing exchange Clemons describes, № 2 at 5, purportedly about a stack of unreviewed investigation materials, is not in any transcript in the record. How to use, or not use, empty-chair evidence is, of course, quintessentially a strategic decision, entitled to a strong presumption of reasonableness because reasonable lawyers will disagree. *Strickland*, 466 U.S. at 690–91. This Court would add that counsel explored and pushed the "someone else was there later" theory on cross examination of the folks from the crime lab and the police officers. Counsel's not pursuing more testing on the towel was, as Judge Singleton concluded, within the range of reasonable strategic choices. The options were few: tape lifts from the towel didn't provide enough

material for DNA tests, № 36-A at 538, 574; neither did scrutiny of several cuttings, including one with a dark spot that may have been blood. *Id. at 573–75.* And the risk was high: if further testing had revealed more DNA from Clemons, then counsel's push here would have helped convict his client. The circuit court's decision—Clemons has not shown poor performance or prejudice on his first point—wasn't unreasonable.

Second, counsel's handling of the DVD of Clemons's post-arrest statement to El Dorado officers in Wisconsin. 2010 Ark. 337, at *11–*12. Clemons's lawyer moved to suppress it. At a hearing three days before trial, he argued four things: the prosecutors hadn't timely disclosed the DVD; it was self-incriminating; its probative value was outweighed by its unfairly prejudicial effect because Clemons stutters; and it wasn't voluntary. The beginning of the statement was played. Both the officers who questioned Clemons testified. And the lawyers argued. Clemons's lawyer had not viewed the DVD before the hearing. It turned out that the prosecutor had mailed the DVD several months before to an old address for Clemons's lawyer. The prosecutor had given him another copy the week before the hearing, but he hadn't been able to play it despite trying five different DVD

players.  This DVD had to be played on a computer.  The prosecutor gave

Clemons's lawyer an unedited sixty-five-page transcript of the interview the

day of the hearing.  № 36-A at 116.  (Neither the complete transcript nor the

DVD is in the record.  The exhibits include a photocopy of the DVD itself and

the first two pages of the transcript.  № 36-A at 696–97 & exhibit envelope.)

The circuit court rejected all arguments for suppression, but twice asked

Clemons's lawyer if he wanted a continuance of trial, which was set to begin

in three days.  Twice counsel said no to a continuance.  On direct appeal, the

late disclosure was pressed.  The Supreme Court held that counsel's refusal

of a continuance waived the point.  2010 Ark. 337, at *12.  In his Rule 37

petition, Clemons faulted his lawyer for not accepting the continuance offer.

Circuit Judge Singelton rejected this argument.  № 7-5 at 3.  Clemons renews

it here.

The circuit court's rejection of this allegedly ineffective choice wasn't

unreasonable on the law or the facts.  28 U.S.C. § 2254(d)(1) & (2); *Strickland*,

466 U.S. at 690.  The context is critical.  Having more than three days to study

the video would, of course, have been useful in the defense.  But Clemons had

been in custody for a year.  № 36-A at 21, 37.  He had tried to get released

based on insufficient evidence and a speedy trial violation. № 36-A at 11, 21.
Both efforts failed.   A January 2009 setting had been compromised a few
weeks before trial by the disclosure of the jail house informant as a new
witness; the resulting continuance was on Clemons's motion. № 36-A at 53,
55. The parties were three days away from the March 2009 trial date when the
circuit court ruled that the statement was coming in. At that point, Clemons's
lawyer would have been all geared up for trial.   Whether a delay—of
uncertain length—was better than pressing forward was a tactical decision.
The law's strong presumption of reasonable professional judgment shields
counsel's choice. *Strickland*, 466 U.S. at 690.

This Court, moreover, doubts whether Clemons was actually prejudiced
by not postponing trial again.   Clemons's counsel got at least a rough
transcript of the interview at the pretrial hearing. According to the El Dorado
Chief of Police at trial, the transcript contained some duplications and wasn't
very accurate. № 36-A at 465.   More importantly, counsel learned that he
needed to play the DVD on a computer. As Judge Singleton pointed out, this
recording was not a confession. Clemons's statement was consistent with his
defense as a whole:  he was innocent of robbery and murder, but had had a

-14-

chance sexual encounter with Ponder earlier that day. Clemons hasn't shown that, had there been a continuance, there's a reasonable probability the jury would have acquitted him. *Strickland*, 466 U.S. at 694. (Because the State waived the death penalty and Clemons waived presentation of lesser-included offenses, acquittal was the only alternative result. *Ibid.*)

Clemons speculates that, with more time, counsel could have constructed a suppression argument based on goading and manipulative questions. № 2 at 12. The first theory is a variation on coercion, which the circuit court had already rejected. The second is simply unsound: most police interviews of a suspect are designed to elicit incriminating information. That design doesn't supply an adequate basis for suppression.

Third, Clemons argues that counsel wasn't effective during *voir dire* in ferreting out homosexuality-related bias and in addressing the "CSI effect." Circuit Judge Singleton rejected the bias claim as meritless. № 7-5 at 3. This conclusion wasn't unreasonable; the transcript supports it: counsel sufficiently ventilated the potential for bias related to homosexuality. This issue was covered with the *venire* and individual potential jurors. № 36-A at 159–64, 169, 175–76, 182–83, 187, 191–92, 198, 207–08, 220, 224–25, 243 & 247.

Those who said it might affect their deliberations were excused. *№ 36-A at 239–41.* Clemons has suggested in passing that his lawyer failed him by not questioning potential jurors about what he now calls the "CSI effect"—a supposed rush to judgment by local jurors because his DNA was at the scene—but the circuit court didn't address that issue on the merits. *Compare № 9 at 32, with № 7-5 at 7.* This argument, however, also lacks any merit. Clemons's lawyer handled the experts well. For example, he elicited defense-helpful testimony on cross: Clemons's DNA was confirmed only on the cigarette butt and the two small semen stains, nowhere else at the scene; and it was impossible to say when this DNA was left. Clemons hasn't shown that not questioning the *venire* about a "CSI effect" actually prejudiced him. *Sasser*, 743 F.3d at 1151; *Gabaree v. Steele*, Nos. 13-3486 & 13-3568, 2015 WL 4126428, at *7–*8 (8th Cir. 8 July 2015).

Fourth, Clemons argues that three unmade objections during his three-day trial show ineffective assistance. The circuit court concluded otherwise, and that conclusion was not only reasonable but clearly correct. The unobjected testimony was marginal. Whether to draw attention to an unresponsive answer (Sandifer), a mostly irrelevant personal matter (Wade),

-16-

or some hearsay (Morrow), was a trial lawyer's judgment call. Further, any potential prejudice was *de minimus*. While this Court does not adopt all the circuit court's factual analysis, no basis for relief under § 2254(d) is presented.

Sandifer and Ponder had a long-term sexual relationship. He was a person of interest during the investigation. When asked if he had volunteered DNA, fingerprints, and palm prints, Sandifer responded, "Yes, sir, even, what do you call them tests?" № *36-A at 321*. The prosecutor deflected this oblique reference to a polygraph or stress test and moved on.

It's unclear whether the circuit court adopted the State's first responding argument, which interpreted Sandifer's comment as a reference to the DNA tests. As Clemons argues, this interpretation would be clearly wrong on the facts. The deeper, and dispositive point, is that Sandifer's slip didn't refer to Clemons or polygraph tests of him. No one argues that Sandifer was actually the culprit. The lack of an objection worked no prejudice to Clemons.

The father of Jim Wade, one of the police officers, passed away the day before trial. At the end of his direct testimony, Wade said it was "a little difficult" for him to remember some investigation details. The prosecutor then brought out that Wade's father had just died. № *36-A at 406–07*. The

circuit court correctly rejected Clemons's argument that this brief exchange either inflamed the jury or harmed the defense.  Having provided detailed testimony about his getting the crime lab to retest some evidence in this then-cold case, Wade was having trouble recalling some other phone calls and such.  *Ibid.*  This testimony wasn't objectionable; and, as the circuit court reasonably concluded, didn't prejudice Clemons in any way because the details Wade forgot just didn't matter.

Last, some hearsay from Officer Jamie Morrow.  After Clemons was arrested, Morrow presented a photo array to Gerald Fifer — the fellow who had, the day after Ponder's murder, told officers that he'd glimpsed a black man on a bicycle near the flower shop sometime on the day of the murder. At the end of Morrow's direct examination, this exchange occurred.

> Q.   Is there anything else about that conversation on April 9th, 2008, with Mr. Fifer that you recall?
> A.   Well, he told me that, you know, he didn't know about all of this because he just found out that Mr. Clemons was his cousin.  So he said he needed to do the right thing.

№ 36-A at 435.  Clemons's lawyer didn't object.

Morrow's answer was hearsay, not within any exception.  The circuit court concluded that there was no prejudice, reasoning that Fifer put Clemons

at the scene around 4:30 p.m. and Clemons had admitted being there around that time. № 7-5 at 4–5. Clemons attacks this analysis, zeroing in on the time.

This Court need not address the circuit court's reasoning, which was partly mistaken on the time testimony, because not objecting was a reasonable tactical choice and there's no reasonable possibility of prejudice from this stray hearsay. The "do the right thing" statement is ambiguous. An objection would have only drawn attention to it. Fifer had already testified. He had been questioned closely by both sides. And the circuit court questioned him about when he found out that Clemons was his cousin; that had occurred before the photo array. № 36-A at 325–38. Morrow's report about Fifer's ambiguous comment didn't alter the course of this trial; and it was well within the range of competent professional judgment to let it go. *Strickland*, 466 U.S. at 690.

Fifth, the photo array itself. About a week after Clemons was arrested, and after Fifer had learned of the arrest and that they were cousins, police interviewed Fifer again and presented a six-pack of photos. Fifer picked Clemons's photo, saying the man on the bicycle looked like Clemons, but he couldn't be sure it was him. Clemons argues that his lawyer was ineffective

for not moving to exclude the out-of-court identification. It was inadmissible, he says, because of the post-arrest timing and counsel's absence. № 2 at 17–21. The circuit court rejected these arguments, giving two reasons: Fifer's I.D. merely corroborated Clemons's statement that he'd been at the shop around 4:30; and the law did not require counsel's presence at the photo array.

The circuit court's first reason, as Clemons argues hard, cannot be sustained on the record. Fifer was wishy washy about what time he saw the black man on the bicycle. He told police the day after the murder that it was around 3:30. At trial, he confirmed this, but all he could say for sure then, some eighteen years later, was that it was during the work day. № 36-A at 327–28, 331–32, 334–35 & 336. Fifer never said it was around 4:30. And according to the officers who questioned Clemons, all he could remember was that he was at the shop after his work — sometime between 3:00 and 5:00. № 36-A at 421, 444. There was no testimony from anyone that it was around 4:30 for sure. There is corroboration in general between Fifer and Clemons on the time — late afternoon. But no hard linkage on the specific time of "around 4:30 p.m." exists in the record. Compare 7-5 at 5.

-20-

The circuit court's second reason, though, was unassailably reasonable and correct to boot. Counsel's absence from the photo array is not a sufficient basis for excluding the identification. *United States v. Ash*, 413 U.S. 300, 321 (1973). Neither is the array's timing after Clemons's arrest and Fifer's learning of the arrest. "[T]here is no right to counsel at the showing of a photographic array, either pre-charge or post-charge." *United States v. Amrine*, 724 F.2d 84, 86–87 (8th Cir. 1983). Counsel was not ineffective for not filing a motion unsupported by the law. Finally, the circuit court correctly rejected Clemons's passing argument about when during the trial his lawyer sought to introduce Fifer-related police reports. № 2 *at 20*. Counsel wasn't ineffective because the reports were inadmissible period. ARK. R. EVID. 803(8)(i); *see also House v. Volunteer Transport, Inc.*, 365 Ark. 11, 21, 223 S.W.3d 798, 805 (2006).

Sixth, Clemons challenges his lawyer's handling of Wilford Frazier (the State's jail house informant), two letters Frazier wrote about Clemons's purported confession to him, and proposed testimony from the informant's lawyer about the second letter. The evidentiary issue about the lawyer's testimony was raised on direct appeal, but not addressed on the merits. 2010

Ark. 337, at *8–*10.  The circuit court denied Clemons Rule 37 relief on all the Frazier issues, mainly because Clemons's "trial counsel was allowed to fully and thoroughly cross-examine [Frazier] to establish any bias, prejudice[,] or offers of leniency."  № 7-5 at 6.

Clemons has not demonstrated that the circuit court's rejection of ineffective assistance here was unreasonable.  28 U.S.C. § 2254(d).  First, Frazier testified that Clemons confessed to him *after* Frazier had been sentenced.  № 36-A at 583.  But the premise of Clemons's argument about the missing first letter to the prosecutor is that Frazier wrote it *before* he was sentenced, seeking leniency based on Clemons's revelation to him.  The timing underneath Clemons's argument is off.  Second, the prosecutor said at trial that he did not have this letter and had never seen it.  № 36-A at 647. Clemons's lawyer wasn't ineffective for not getting a document from the prosecutor's file that the prosecutor didn't have.  Third, Frazier, sitting before the jury in his prison whites, was cross examined about his motives and truthfulness.  For example, Clemons's lawyer exposed that Frazier had lied to him, saying in a call from jail that the confession conversation never happened.  (Illustrating the risk of most every step at trial, this exposure came

-22-

at a price: Frazier also said he'd lied during the call because Clemons was standing right there and later threatened him. № 36-A at 588–90.)

The circuit court's evidentiary rulings are matters of Arkansas law, which are not for this Court to second guess. The dispositive point is that Clemons's lawyer challenged Frazier's testimony, both in cross examination and by calling a jailer in an effort to create doubt about whether the confession conversation had ever occurred given Clemons's and Frazier's separate housing and jail policies. Clemons's criticisms here run afoul of *Strickland*'s teaching: the constitutional standard is not whether his lawyer's efforts on the Frazier issues were perfect in hindsight. The circuit court's conclusion that they were adequate in the circumstances wasn't unreasonable.

Seventh, Clemons says his lawyer's advice not to testify was bad. The circuit court correctly rejected this contention. Clemons had a criminal record. Testifying would have revealed the details of it to the jury. Further, given the video statement, trial testimony presented a risk of damaging cross about alleged inconsistencies in that statement, as well as potential new inconsistencies created by statements at trial. The circuit court was right: counsel's advice against testifying was a matter of professional judgment,

-23-

which does not seem questionable, even in retrospect. *See, e.g., United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011). A defendant may not "indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.'" *United States v. Bernloehr*, 833 F.2d 749, 751–52 (8th Cir. 1987).

Eighth, Clemons argues that trial counsel was ineffective because he sandbagged Clemons's opportunity to make ineffectiveness claims on direct appeal. Counsel did this, the argument goes, by not stepping aside immediately, by agreeing to handle the appeal, by letting the short window for a post-trial motion close, and by delaying a notice of appeal until the last possible day. *№ 2 at 26–28.*

This is a new theory of trial counsel's ineffectiveness. Clemons did not raise it in his Rule 37 petition. *№ 9 at 29–38.* Pursuant to *Martinez* and *Trevino*, this Court addresses it nonetheless. Clemons's sandbagging argument fails for a lack of prejudice. *Sasser*, 743 F.3d at 1151; *Gabaree*, 2015 WL 4126428, at *7–*8. None of his other ineffective-assistance arguments has any merit. Therefore, his trial lawyer did not stand in the way of Clemons making some meritorious ineffectiveness argument on direct appeal. The

Arkansas Rules of Criminal Procedure's post-trial deadlines make it virtually impossible for ineffectiveness claims to be developed adequately or pursued successfully on direct appeal. There's no evidence of record that Clemons's trial lawyer handled the appeal for any reason other than to help his client. Clemons's theory here is really an attack on the long-standing Arkansas rules about post-trial motions and appeals; and that attack is misplaced in this case.

6. **Ineffectiveness of Appellate Counsel?** Clemons argues that his lawyers on direct appeal performed deficiently in a couple of ways. He only made part of this argument on collateral review. № 9 at 37–38. And it is unsettled whether the *Martinez/Trevino* exception allows scrutiny of defaulted claims about appellate counsel's effectiveness. *Compare, e.g., Dansby v. Hobbs*, 766 F.3d 809, 833–34 (8th Cir. 2014) (petition for writ of certiorari pending), *with Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1293–95 (9th Cir. 2013). As things stand now in the Eighth Circuit, this argument fails as a matter of law. *Dansby*, 766 F.3d at 833–34. But for the reasons explained before, the Court proceeds nonetheless to the merits in the alternative.

Clemons's main point is that no ineffectiveness claim was made on direct appeal. *№ 2 at 29–32.* This Court has already addressed and rejected

that argument in terms of trial counsel's alleged ineffectiveness. It fares no better as a stand-alone claim. Moreover, this Court has considered each argued instance of ineffectiveness at trial on the merits.

Clemons also argues that his appellate counsel made two wrong arguments, which resulted in the Arkansas Supreme Court not reaching the merits on sufficiency of the evidence or on the excluded testimony about one of the Frazier letters. *№ 2 at 28–29.* Clemons is mistaken on the first issue. Counsel made the right argument, albeit unsuccessfully, about the weight of the evidence. Counsel did not focus on premeditation and deliberation; they made a passing reference to the absence of evidence of either. *№ 36-B at Arg. 1–Arg. 6.*

Clemons is correct, in part, on the second issue. The Arkansas Supreme Court did not reach the merits on admissibility of the proposed testimony about Frazier's post-sentencing letter. Counsel's failure to challenge the circuit court's reasoning, by not arguing that the testimony wasn't hearsay, waived this issue. 2010 Ark. 337, at *9–*10. Clemons is right about this error in argument. The underlying issue is a tangle: there would have been an inherent ethical quandary in having Frazier's lawyer testify that his former

-26-

client perjured himself; and Clemons's counsel would have been hard-pressed to skirt a hearsay problem in Circuit Judge Anthony's absence.  But even assuming that this error constituted ineffective assistance, Clemons is not entitled to relief because he hasn't shown sufficient prejudice. *Sasser*, 743 F.3d at 1151; *Gabaree*, 2015 WL 4126428, at *7–*8.  He hasn't shown that, had counsel argued that the proposed testimony about the letter was not hearsay, there is a reasonable probability that the Arkansas Supreme Court would have agreed and reversed his conviction based on this evidentiary error. *Strickland*, 466 U.S. at 694.  Getting a jury's verdict reversed based on an evidentiary error is notoriously difficult in general.  Here, Frazier was thoroughly examined about his letters and his motives.  His hope of getting some kind of reward for helping convict Clemons was patent.  The most probable result is that the Supreme Court would have concluded that any evidentiary error was harmless.

**7. Does Sufficient Evidence Support Clemons's Conviction?** Yes. The Arkansas Supreme Court recited the proof in the light most favorable to the verdict. 2010 Ark. 337 at *1–*8.  These findings are presumptively correct. 28 U.S.C. § 2254(e)(1).  Clemons hasn't overcome this strong presumption by

clear and convincing evidence. *Ibid.* For example, on the time issue, while Clemons argues that all the proof allows the reasonable inference that he was at the flower shop hours before Ponder was robbed and murdered, the evidence about time also allows the reasonable inference that Clemons was there late in the day — after his work and before 5:00, as Clemons said in his statement. Ponder was murdered sometime after 4:15, when a customer saw him and paid a bill at the drive-through window. № 36-A at 298–99. The jail house informant's testimony was, for the reasons explained before, properly weighed in the balance. It may not be disregarded as Clemons argues.

This Court does not review the correctness of the Arkansas Supreme Court's ruling on sufficiency as a matter of state law. This Court sees no such error, but that's beside the point. On habeas, the point is whether that ruling, evaluated in terms of the supporting evidence, was both incorrect *and* objectively unreasonable as a matter of federal law. *E.g., McDaniel v. Brown,* 558 U.S. 120, 132–33 (2010); *Garrison v. Burt,* 637 F.3d 849, 854–55 (8th Cir. 2011). The Constitution was violated if no rational fact finder could have found Clemons guilty beyond a reasonable doubt. *Garrison,* 637 F.3d at 854; *see also Moeller v. Attorney General of State of South Dakota,* 838 F.2d 309, 310

-28-

(8th Cir. 1988) (Arnold, J.).  Clemons has not cleared this high bar.  His alternative interpretation of the record — he was there earlier in the day, but had no part in any crime — is plausible.  But it was not irrational for the jury to go another way.  Any impartial juror could have reasonably rejected Clemons's interpretation of the record, concluded beyond reasonable doubt the sexual encounter turned violent over the money, that Clemons stabbed Ponder during a struggle, and that Clemons stole Ponder's wallet.  These facts satisfy the Arkansas statutes then in force.  ARK. CODE ANN. §§ 5-10-101(a)(1) & 5-12-102(a) (Supp. 1991).  Clemons's conviction does not violate the Due Process Clause.

8. **The Frazier Letter Testimony?**  Clemons argues this issue again as a separate claim.  For the reasons explained, it lacks merit.  Clemons had the opportunity to challenge Frazier's testimony adequately and did so.  Both letters were covered.  Frazier's changing stories about whether Clemons confessed or not were covered.  And whether the conversation ever occurred, based on these prisoners' housing and the jail's policies, was ventilated with jailer testimony.  Clemons hasn't satisfied either branch of § 2254(d) on this issue.

9. **Suppression of the Wisconsin Statement?** Clemons makes this claim independently too. The Court has already addressed it on the merits as part of trial counsel's alleged ineffectiveness. Clemons says: "Effectively [the DVD] was withheld from him [ ]" by the prosecutor. *№ 2 at 38*. Clemons is mistaken. The material circumstances do not show that the prosecutor either failed in his state-law disclosure obligations or violated the Constitution in handling the DVD. *Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir. 1998).

10. **Actual Innocence?** Clemons has steadfastly maintained his innocence. This thread runs through most all his arguments. To the extent Clemons is making a "gateway" actual-innocence claim, it is moot because the Court has taken up the merits of Clemons's claims. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). And to the extent he makes a free-standing actual-innocence claim—assuming that claim is cognizable—he has not met the "extraordinarily high" threshold showing of innocence needed to support it. *Herrera v. Collins*, 506 U.S. 390, 417 (1993); *see also House v. Bell*, 547 U.S. 518, 554–55 (2006), *and Dansby*, 766 F.3d at 816–17. Clemons has tried to gather new evidence that might exonerate him. But his efforts to get more scientific testing done haven't succeeded. *E.g.*, 2014 Ark. 454. On the existing record,

the Court cannot conclude that justice miscarried and that Clemons is actually innocent.

* * *

Clemons's habeas petition presents no meritorious basis for relief.  It will be dismissed.

So Ordered.


_WPM Marshall Jr._
D.P. Marshall Jr.
United States District Judge

_31 July 2015_